UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(CIVIL DIVISION)

| | |
|---|---|
| ANGELA FRIES<br>2501 EAST JOHNSON DR<br>#D16<br>NEVADA, MO 64772<br><br>Plaintiff,<br><br>vs.<br><br>ASTRAZENECA<br>PHARMACEUTICALS LP,<br><br>Defendant. | COMPLAINT FOR DAMAGES<br>JURY DEMAND<br><br>(PRODUCTS LIABILITY) |

## COMPLAINT

**(Products Liability – Personal Injury)**

COMES NOW the Plaintiff, by and through her undersigned attorney, and for her Complaint against Defendant AstraZeneca Pharmaceuticals LP, ("AstraZeneca"), and alleges as follows:

1. This action is brought by Plaintiff seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, Seroquel, which was manufactured, marketed, distributed and/or sold by AstraZeneca to the general public.

## PARTIES

2. Plaintiff, Angela Fries, is a resident of Missouri. Angela Fries was prescribed, purchased and ingested Seroquel. After using Seroquel, Plaintiff was diagnosed with Diabetes Mellitus.

3. AstraZeneca Pharmaceuticals LP, a foreign (Delaware) corporation which does business in the State of Missouri by distributing, marketing, selling and/or profiting

from Seroquel in the State of Missouri and the United States. AstraZeneca Pharmaceuticals LP, is the U.S. Subsidiary of AstraZeneca PLC, and was created as a result of the union of Zenaca Pharmaceuticals and Astra Pharmaceuticals LP in the U.S. after the 1999 merger. AstraZeneca Pharmaceuticals LP's principal place of business is in Delaware.

4. At all times material hereto, AstraZeneca PLC and AstraZeneca Pharmaceuticals LP (a wholly owned subsidiary of AstraZeneca PLC) (collectively referred to as "AstraZeneca") have shared many of the same officers and directors and have had a unity of interest in ownership sufficient to make them indistinguishable.

## FACTUAL BACKGROUND

5. In June 1997, the Food and Drug Administration ("FDA") approved the newest "atypical anti-psychotic", Seroquel (quetiapine fumarate), for use in the United States. At that time, Seroquel was approved for use in dosages of 50mg, 100mg, or 200 mg.

6. The prescription drug "Seroquel" (quetiapine fumarate) is an "anti-psychotic" medication, belonging to a class of drugs referred to as "atypical anti-psychotics." (Other atypicals include Zyprexa (Eli Lilly), Risperdal (Johnson & Johnson), and Abilify (Bristol-Myers Squibb), which have been in use in the United States since the early to mid 1990's.

7. Seroquel is a medication commonly prescribed to patients to aid in the treatment of mental disorders including schizophrenia. The pharmacologic action of Seroquel is thought to be dependent on its ability to block or moderate the level of dopamine, a chemical found in the brain that in excessive amounts is believed to cause abnormal thinking and hallucinations. It appears to work primarily by blocking

neurotransmitter sites of serotonin and dopamine, as well as muscarinic and alpha-adrenergic, and histamine receptors.

8. Seroquel is available in 25mg, 100mg, 200mg, and 300mg dosages. The total daily dose for the first four days of therapy is 50 mg (Day 1), 100 mg (Day 2), 200 mg (Day 3) and 300 mg (Day 4). From Day 4 onwards, the dose should be titrated to an effective dose in the range of 300-450 mg/day or less. That is, Seroquel is usually given once daily, with the dose often adjusted upward until an optimal dose is found.

9. AstraZeneca obtained, licensed, manufactured, promoted, marketed, developed and placed in the stream of commerce the pharmaceutical "quetiapine fumarate" which was sold in the United States under the trade name "Seroquel."

10. From at least 1997 through today, the Defendant manufactured, labeled, packaged, distributed, supplied, marketed, advertised, dispensed and sold, and by said activities, caused Seroquel to be placed into the stream of commerce throughout the United States, including the District of Columbia, and to ultimately reach the Plaintiff for consumption.

11. At all times material hereto, AstraZeneca did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn, and/or otherwise caused the product Seroquel to be placed into the stream of commerce, and ultimately to be ingested by the Plaintiff.

12. Seroquel was widely advertised, marketed and represented by AstraZeneca as a safe and effective atypical anti-psychotic.

13. The product warnings for Seroquel in effect during the relevant time period were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks

associated with this drug.

14. The anti-psychotic drug market is enormous. Defendant viewed Seroquel as a blockbuster product with significant projected growth potential. In 2002 alone, Seroquel reached over $1.2 Billion in sales.

15. The use of Seroquel has been has been known to cause serious and sometimes fatal injuries to the liver, kidneys, and pancreas. Its adverse effects include, but are not limited to, ketoacidosis, pancreatitis, and diabetes mellitus, and other serious health problems associated with diabetes including heart disease, blindness, coma, seizures, and death. In addition to an increased risk of developing diabetes mellitus, and the serious complications streaming therefrom, including seizures, coma, death, liver disease, kidney disease, blindness, other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia have been attributed to Seroquel.

16. The reported risk associated with Seroquel and the onset of diabetes is nearly 3.34 times higher than older drugs used to treat schizophrenia, such as Haldol. According to these reports, compared to other drugs in its class, Zyprexa, (Eli Lilly & Co.) – 1.27 times more likely, and Risperdal (Johnson & Johnson) – 1.49 times more likely, Seroquel has a much greater increased association with the onset of diabetes mellitus than any other anti-psychotic on the market.

17. Seroquel was marketed heavily by AstraZeneca as a safe and effective treatment for the treatment of schizophrenia, promising fewer side effects than other similar treatments including the other atypical antipsychotics on the market.

18. AstraZeneca, through its marketing department, its sales managers, and field sales force promoted the drug for uses beyond its approved indications, offering

incentives to doctors to increase prescriptions. Through these marketing efforts, AstraZeneca was able to capture a larger market share in the anti-psychotic market.

19. These marketing efforts were designed and implemented to create the impression in physicians' minds that Seroquel was safe and effective for his patients, and that it carried less risk of side effects and adverse reactions than other available treatments.

20. The marketing and promotion efforts of AstraZeneca, its advertisers, and sales force served to overstate the benefits of Seroquel, and minimize and downplay the risks associated with the drug. These promotional efforts were made, while fraudulently withholding important safety information from the physicians, the FDA, and the public, specifically that AstraZeneca was aware of numerous reports of diabetes associated with the use of Seroquel, well beyond the background rate, and well beyond the rate for other anti-psychotic agents.

21. On August 22, 2003, new reports were issued which confirmed previous studies describing a link between the class of atypical antipsychotics and diabetes. These new reports, described an increased incidence of diabetes in patients receiving Seroquel, than in patients receiving older anti-psychotics, or even other atypicals, including Zyprexa, Clozaril, and Risperdal.

22. Clozaril (clozapine) was the first atypical introduced in the early 1990's. Risperdol, (risperidone), was approved for use in the United States in 1994. In September 1996 the Food and Drug Administration (FDA) approved another new atypical antipsychotic, Zyprexa (olanzapine), for use in schizophrenia, and Seroquel (quetiapine) was approved in September 1997.

23. These look-alike, copycat drugs are nothing new in the pharmaceutical

industry, as major manufacturers, who have poured so much money into marketing, and away from research are forced to introduce copycat drugs to the market rapidly, to avoid losing market share to its competitors. The copycat drugs are often accompanied by promises of better efficacy and less side effects, but typically, they are approved without the requirements of significant testing, riding the coat tails of drugs already on the market.

24. The Japanese label for Seroquel provides a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informs physicians regarding the necessity of medical monitoring of patients on Seroquel. At the time the Plaintiff ingested Seroquel, the Defendant had not adopted this safer, more accurate, label for the U.S. distribution of Seroquel.

25. The Japanese label warns specifically of the diabetes risk, prominently in the beginning of the package label stating:

    a. Quetiapine is contraindicated for use in patients with diabetes or a history of diabetes;

    b. Quetiapine should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes;

    c. Patients receiving quetiapine should be carefully monitored for symptoms of hyperglycemia and the drug should be discontinued if such symptoms occur. The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination; and,

    d. Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with the quetiapine and how

to identify the symptoms of hyperglycemia.

26. In regulatory action overseas, the Ministry of Health, Labor, and Welfare in Japan has ordered a Dear Doctor warning for AstraZeneca's quetiapine (Seroquel) after the ministry received 13 reports of serious side effects, including one death, since the drug's launch in that country in February 2001. Case reports involved elevated levels of blood glucose, diabetic ketoacidosis, and coma.

27. Japanese researchers report that severe weight gain can be a serious side effect of combination therapy involving atypical antipsychotics and certain SSRIs. In particular, in a retrospective chart review, they identified the combination of risperidone and paroxetine as associated with severe weight gain—as much as 14 kg over four months in one patient—that also resulted in diabetic complications. The authors speculate that the cause is a drug-drug interaction involving inhibitory actions by both drugs on the cytochrome P450 enzyme, CYP2D6.

28. While warning of the association of Seroquel with diabetes, increased glucose tolerance, ketoacidosis, weight gain, and the need for medical monitoring in Japan, AstraZeneca has left the US public and physicians in the dark.

## JURISDICTION AND VENUE

29. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship between Plaintiff and the Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Defendant sells and markets Seroquel in the District of Columbia and otherwise regularly conducts business in the District of Columbia.

## COUNT I

**NEGLIGENCE**

30. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

31. Defendant is the designer, manufacturer, and seller of the drug Seroquel.

32. When placed in the stream of commerce in 1997, Seroquel was not accompanied by adequate warnings regarding the significant blood sugar related risks associated with the ingestion of Seroquel, particularly diabetes mellitus. The warnings given by the defendant did not accurately reflect the existence of the risk, let alone the incidence, symptoms, scope, or severity of such injuries.

33. Defendant failed to perform adequate testing concerning the safety of the drug Seroquel in that adequate testing would have shown that Seroquel poses serious risk of blood sugar related problems which would have permitted adequate and appropriate warnings to have been given by Defendant to prescribing physicians, health insurance companies, the various states' formularies, and the consuming public.

34. Defendant had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of the drug, Seroquel, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

35. Defendant was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Seroquel in that, among other things, the Defendant:

   a. failed to use reasonable care to design an atypical anti-psychotic that was safe for its intended and foreseeable uses, not defective, and not unreasonably dangerous;

b. failed to use reasonable care in designing and manufacturing Seroquel as to make it safe for its intended uses, not defective, and not unreasonably dangerous;

c. recklessly, falsely, and deceptively represented or knowing omitted, suppressed, and/or concealed material facts regarding the safety and efficacy of Seroquel from prescribing physicians, the medical community at large, health insurers, state formularies;

d. negligently marketed Seroquel despite the fact that risks of the drug were so high and the benefits of the drug were so speculative that no reasonable pharmaceutical company, exercising due care, would have done so;

e. failed to use reasonable care to make reasonable tests, inspections, drug trials, and/or evaluations necessary to discover such defects and unreasonably dangerous conditions associated with defendant's drug, Seroquel;

f. failed to comply with and/or to use reasonable care to comply with standards of care including accepted industry standards, FDA recommendations, government regulations, statutes, in the design, manufacture, affixing of warnings, and otherwise production and distribution of defendant's drug, Seroquel;

g. failed to use reasonable care to timely remove and/or recall from the market, retrofit, and/or otherwise prevent the continued contact of

    a. plaintiff or persons like plaintiff with such defects and unreasonably dangerous conditions of Seroquel;

h. failed to use reasonable care to investigate and/or use known and/or knowable reasonable alternative designs, manufacturing processes, and/or materials for Seroquel;

i. failed to use reasonable care to warn plaintiff of dangers known and/or reasonably

suspected by defendant to be associated with Seroquel;

j. failed to timely use reasonable care to discover the dangerous conditions or character of defendant's drug, Seroquel;

k. failed to use due care in the design, testing and manufacturing of Seroquel so as to prevent the aforementioned risks, including, inter alia, diabetes mellitus, and the serious complications streaming thereform including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia, to individuals when Seroquel was used as a medication;

l. failed to issue proper warnings regarding all possible adverse side effects associated with the use of Seroquel and the comparative severity and duration of such adverse effects, despite the fact that the defendant knew, or should have known, that numerous cases reports, adverse event reports, and other data that associated Seroquel with diabetes mellitus, and the serious complications streaming there from including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia;

m. failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Seroquel;

n. failed to provide adequate training and information to medical care providers for the appropriate use of Seroquel;

o. failed to warn plaintiff and healthcare providers, prior to actively encouraging and promoting the sale of Seroquel, either directly, or indirectly, orally, in writing, or other media about the following:

p. The need for a battery of diagnostic tests to be performed on the patient prior to ingesting Seroquel to discover and ensure against potentially fatal side effects; and/or

q. The need for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal side effects; and/or

r. The adverse side effects associated with the use of Seroquel, including, but not limited to, diabetes mellitus; and/or

s. The possibility of becoming disabled as a result of using Seroquel; and,

t. failed to timely develop and implement a safer, alternative design of Seroquel, which would meet the same need without the known risks associated with Seroquel and which would not have made the product too expensive to maintain its utility.

36. Despite the fact that the defendant knew or should have known that Seroquel caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the defendant continued to market Seroquel to consumers, including the plaintiff, when there were safer alternative methods available.

37. Defendant knew or should have known that consumers such as plaintiff would foreseeably suffer injury as a result of defendant's failure to exercise ordinary care as described above.

38. As a direct and proximate result and legal result of the defendant's failure to supply appropriate warnings for the drug, Seroquel, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action of the defendant described herein, the Seroquel recipient Plaintiff ingested Seroquel and suffered significant injury.

39. Defendant's negligence was a proximate cause of the harm suffered by the plaintiff.

40. As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

WHEREFORE, the Plaintiff demands judgment in her favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT II

### STRICT PRODUCT LIABILITY
### (Failure to Warn)

41. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

42. The Seroquel manufactured and/or supplied by defendant was unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects; the warnings given did not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects. Defendant failed to perform adequate testing in that adequate testing would have shown that Seroquel possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of Seroquel. Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drug.

43. The Seroquel manufactured and/or distributed and/or supplied by

defendant was defective due to inadequate post-marketing warning or instruction because defendant failed to provide adequate warnings to users or consumers of Seroquel and continued to aggressively promote Seroquel.

44. As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

WHEREFORE, the Plaintiff demands judgment in her favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT III

### STRICT PRODUCT LIABILITY
### (Pursuant to Restatement Second of Torts 402a (1965))

45. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

46. The Seroquel manufactured and/or distributed and/or supplied by defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design and formulation of the drug.

47. Alternatively, the Seroquel manufactured and/or distributed and/or supplied by defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than alternative drugs available for the treatment of schizophrenia or bi-polar

mania, namely so-called first generation anti-psychotics.

48. There existed, at all times material hereto, safer alternative medications.

49. Defendant did not perform adequate testing upon Seroquel. Adequate testing would have revealed that Seroquel causes serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

50. The Seroquel manufactured, designed, marketed, distributed and/or sold by defendant was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Seroquel, and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

51. Defendant did not warn the FDA of material facts regarding the safety and efficacy of Seroquel, which facts defendant knew or should have known.

52. The Seroquel manufactured and/or distributed and/or supplied by defendant was defective due to inadequate post-marketing warning or instruction because, after the defendant knew or should have known of the risk of injury from Seroquel, they failed to provide adequate warnings to users or consumers of Seroquel and continued to promote Seroquel.

53. As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

## COUNT IV

## COMMON LAW FRAUD

54. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

55. Defendant either knew or should have known that Seroquel was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed, and otherwise not as represented to be as alleged above.

56. Defendant was under a duty to disclose this information to the Plaintiff under the common law as well as laws requiring it not to engage in false and deceptive trade practices, and as otherwise alleged in this complaint, because Defendant made representations and partial disclosures concerning the nature and quality of this product which they had a duty to correct, because Defendant was in a superior position to know the true state of the facts about the dangerous and defective nature of Seroquel and its known risks to the Plaintiff. These deliberate and/or intentional omissions of material facts and misrepresentations include but are not limited to:

   a. suppressing, failing to disclose and mischaracterizing the known risks of ingesting Seroquel;

   b. omitting material information showing that Seroquel was no more effective than other anti-psychotic drugs on the market available;

   c. failure to timely and fully disclose the actual results of clinical tests and studies related to Seroquel;

   d. failing to issue adequate warnings concerning the risks and dangers of ingesting Seroquel which would disclose the nature and extent of the side effects of Seroquel;

    e. failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

    f. failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done; and,

    g. making the representations concerning the safety, efficacy and benefits of Seroquel as detailed in this complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading.

57. Plaintiff did not know, and could not learn, the material facts and important information Defendant omitted and suppressed. The facts and information suppressed and concealed by Defendant is material, and of such a nature that it can be reasonably presumed that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in causing to Plaintiff to ingest Seroquel and be exposed to such unnecessary risks.

58. As a result of Defendant's fraud, suppression and omission of material facts, the Plaintiff acted to her detriment in purchasing and ingesting Seroquel, which they would not have purchased or ingested had they been told the truth.

59. As a direct and proximate cause and legal result of the defendant's fraud as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

WHEREFORE, the Plaintiff demands judgment in her favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT V

### BREACH OF EXPRESS WARRANTY

60. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

61. Defendant expressly warranted that Seroquel was safe and well accepted by clinical studies

62. Seroquel does not conform to these express representations because Seroquel is not safe and has high levels of serious, life-threatening, side effects.

63. As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

WHEREFORE, the Plaintiff demands judgment in her favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT VI

### BREACH OF IMPLIED WARRANTY

64. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

65. At the time Defendant marketed, sold and distributed Seroquel for use by Plaintiff, Defendant knew of the use for which Seroquel was intended and impliedly warranted Seroquel to be of merchantable quality and safe and fit for such use.

66. Plaintiff reasonably relied upon the skill and judgment of Defendant as to

whether Seroquel was of merchantable quality and safe and fit for its intended use.

67. Contrary to such implied warranty, Seroquel was not of merchantable quality or safe or fit for its intended use, because Seroquel was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

68. As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

WHEREFORE, the Plaintiff demands judgment in her favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT VII

### UNJUST ENRICHMENT

69. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

70. Defendant has been unjustly enriched in the amount of the profits they have earned as a result of Defendant's conduct as alleged herein.

71. Defendant has been unjustly enriched at the expense of and to the detriment of the Plaintiff.

WHEREFORE, the Plaintiff demands judgment in her favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief from Defendant as follows:

Four Million Dollars ($4,000,000.00) in compensatory damages, for personal injuries incurred as a result of ingesting Seroquel, including but not limited to, being diagnosed with Diabetes Mellitus, including but not limited to past medical expenses, future and continuing medical expenses, loss of earning capacity, pain and suffering, mental anguish, ancillary associated expenses, refund of the cost of purchasing Seroquel, plus costs of this action with interest on said judgment at the rate prescribed by applicable law from the date of diagnosis together with any other costs and expenses in connection therewith. Plaintiff further demands judgment against Defendant AstraZeneca Pharmaceutical LP for punitive damages in the amount of Four Million Dollars ($4,000,000.00), together with interest, and all such other relief as the Court deems proper.

Respectfully submitted,

_____
J. Christopher Ide, Esquire (DC 386093)
Michael J. Miller, Esquire (DC 397689)
Miller & Associates
105 North Alfred Street
Alexandria, VA 22314
800-882-2525
703-519-8080
703-519-8084 – Fax
Counsel for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff herewith requests a trial by jury as to all issues of material fact.

Dated:

                        MILLER & ASSOCIATES

By: _____
J. Christopher Ide, Esquire (DC 386093)
Michael J. Miller, Esquire (DC 397689)
Miller & Associates
105 North Alfred Street
Alexandria, VA 22314
800-882-2525
703-519-8080
703-519-8084 – Fax
Counsel for Plaintiff