**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(CIVIL DIVISION)**

| | | |
|---|---|---|
| ANGELA FRIES | ) | |
| 2501 East Johnson Drive | ) | |
| #D16 | ) | |
| Nevada, Missouri 64772 | ) | |
| | ) | |
|      Plaintiff, | ) | Case No.: 1:06-cv-01620-GK |
| | ) | |
| vs. | ) | JURY TRIAL REQUESTED |
| | ) | |
| ASTRAZENECA | ) | |
| PHARMACEUTICALS LP, | ) | |
| 1800 Concord Pike | ) | |
| Wilmington, Delaware 19850 | ) | |
| | ) | |
|      Defendant. | ) | |

**ANSWER AND AFFIRMATIVE AND/OR SEPARATE DEFENSES OF ASTRAZENECA
PHARMACEUTICALS LP TO PLAINTIFF'S COMPLAINT**

Defendant AstraZeneca Pharmaceuticals LP ("AstraZeneca") answers Plaintiff's

Complaint as follows:

**COMPLAINT**

**(Products Liability – Personal Injury)**

1.      This action is brought by Plaintiff seeking damages for personal injuries and

economic damages suffered as a result of a defective and dangerous pharmaceutical product,

Seroquel, which was manufactured, marketed, distributed and/or sold by AstraZeneca to the

general public.

**ANSWER**:  AstraZeneca admits that, pursuant to approval by the Food and Drug

Administration ("FDA"), it manufactures, markets, distributes, and sells SEROQUEL®

(quetiapine fumarate) for prescription by licensed physicians in the United States.  AstraZeneca

denies the remaining allegations of paragraph 1.

## PARTIES

2.      Plaintiff, Angela Fries, is a resident of Missouri.  Angela Fries was prescribed, purchased and ingested Seroquel.  After using Seroquel, Plaintiff was diagnosed with Diabetes Mellitus.

**ANSWER**:  AstraZeneca states that it lacks knowledge or information sufficient to admit or deny the allegations of paragraph 2, and therefore denies same.

3.      AstraZeneca Pharmaceuticals LP, a foreign (Delaware) corporation which does business in the State of Missouri by distributing, marketing, selling and/or profiting from Seroquel in the State of Missouri and the United States.  AstraZeneca Pharmaceuticals LP, is the U.S. Subsidiary of AstraZeneca PLC, and was created as a result of the union of Zenaca [sic] Pharmaceuticals and Astra Pharmaceuticals LP in the U.S. after the 1999 merger.  AstraZeneca Pharmaceuticals LP's principal place of business is in Delaware.

**ANSWER**:  AstraZeneca denies that AstraZeneca Pharmaceuticals LP is a corporation and admits that AstraZeneca Pharmaceuticals LP is a Delaware limited partnership with its principal place of business in Delaware.  AstraZeneca admits that it distributes, markets, and sells SEROQUEL®, a prescription medication, in the State of Missouri and elsewhere in the United States.  AstraZeneca further states that Zeneca Inc. launched SEROQUEL® in the United States, but also states that Zeneca Inc. no longer has any involvement with SEROQUEL® and has transferred all of its assets and liabilities relating to SEROQUEL® to AstraZeneca Pharmaceuticals LP.  AstraZeneca further states that AstraZeneca PLC is a U.K. PLC headquartered in London, and that AstraZeneca PLC was formed in 1999 as a result of the merger between Zeneca Group PLC and Astra AB.  AstraZeneca denies any remaining allegations of paragraph 3.

4.      At all times material hereto, AstraZeneca PLC and AstraZeneca Pharmaceuticals LP (a wholly owned subsidiary of AstraZeneca PLC) (collectively referred to as "AstraZeneca") have shared many of the same officers and directors and have had a unity of interest in ownership sufficient to make them indistinguishable.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 4.

## FACTUAL BACKGROUND

5.      In June 1997, the Food and Drug Administration ("FDA") approved the newest "atypical anti-psychotic", Seroquel (quetiapine fumarate), for use in the United States. At that time, Seroquel was approved for use in dosages of 50mg, 100mg, or 200mg.

**ANSWER**:  AstraZeneca states that SEROQUEL® was approved by the FDA on September 26, 1997, for prescription by physicians in the United States.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 5.

6.      The prescription drug "Seroquel" (quetiapine fumarate) is an "anti-psychotic" medication, belonging to a class of drugs referred to as "atypical anti-psychotics." (Other atypicals include Zyprexa (Eli Lilly), Risperdal (Johnson & Johnson), and Abilify (Bristol-Myers Squibb), which have been in use in the United States since the early to mid 1990's.

**ANSWER**:  AstraZeneca admits that SEROQUEL® was approved by the FDA on September 26, 1997, for prescription by physicians in the United States and that it is indicated for the treatment of schizophrenia and mania associated with Type I bipolar disorder. AstraZeneca further admits that SEROQUEL® is an atypical antipsychotic, as are the other identified medications, but denies that said medications have similar efficacy or safety profiles. AstraZeneca denies any remaining or inconsistent allegations of paragraph 6.

7.    Seroquel is a medication commonly prescribed to patients to aid in the treatment of mental disorders including schizophrenia.  The pharmacologic action of Seroquel is thought to be dependent on its ability to block or moderate the level of dopamine, a chemical found in the brain that in excessive amounts is believed to cause abnormal thinking and hallucinations.  It appears to work primarily by blocking neurotransmitter sites of serotonin and dopamine, as well as muscarinic and alpha-adrenergic, and histamine receptors.

**ANSWER**:  AstraZeneca denies that the allegations of paragraph 7 fully and accurately describe the purpose for which physicians prescribe SEROQUEL® or the pharmacodynamics of the medication.  AstraZeneca denies any remaining allegations of paragraph 7.

8.    Seroquel is available in 25mg, 100mg, 200mg, and 300mg dosages.  The total daily dose for the first four days of therapy is 50 mg (Day 1), 100 mg (Day 2), 200 mg (Day 3) and 300 mg (Day 4). From Day 4 onwards, the dose should be titrated to an effective dose in the range of 300-450 mg/day or less.  That is, Seroquel is usually given once daily, with the dose often adjusted upward until an optimal dose is found.

**ANSWER**:  AstraZeneca admits that SEROQUEL® is available in 25 mg, 100 mg, 200 mg, and 300 mg tablets, but denies that the allegations of paragraph 8 fully and accurately describe the proper dosage and administration of SEROQUEL®.  AstraZeneca denies any remaining allegations of paragraph 8.

9.    AstraZeneca obtained, licensed, manufactured, promoted, marketed, developed and placed in the stream of commerce the pharmaceutical "quetiapine fumarate" which was sold in the United States under the trade name "Seroquel."

**ANSWER**:  AstraZeneca admits that, pursuant to approval by the FDA, it developed, manufactures, markets, promotes, and sells SEROQUEL®.  AstraZeneca denies any remaining allegations of paragraph 9.

10.     From at least 1997 through today, the Defendant manufactured, labeled, packaged, distributed, supplied, marketed, advertised, dispensed and sold, and by said activities, caused Seroquel to be placed into the stream of commerce throughout the United States, including the District of Columbia, and to ultimately reach the Plaintiff for consumption.

**ANSWER**:  AstraZeneca admits that, pursuant to approval by the FDA, it manufactures, labels, packages, distributes, supplies, markets, advertises, and sells SEROQUEL® in the United States, including the District of Columbia.  AstraZeneca denies that it dispenses SEROQUEL®, and states that SEROQUEL® is dispensed by pharmacies pursuant to prescriptions written by physicians.  AstraZeneca further states that it lacks knowledge or information sufficient to admit or deny whether any SEROQUEL® reached Plaintiff for consumption, and therefore denies same.  AstraZeneca denies any remaining allegations of paragraph 10.

11.     At all times material hereto, AstraZeneca did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn, and/or otherwise caused the product Seroquel to be placed into the stream of commerce, and ultimately to be ingested by the Plaintiff.

**ANSWER**:  AstraZeneca admits that, pursuant to approval by the FDA, it designed, tests, manufactures, labels, packages, distributes, supplies, markets, advertises, and sells SEROQUEL® in the United States, including the District of Columbia.  AstraZeneca denies that it caused Plaintiff to ingest SEROQUEL®.  AstraZeneca states that it lacks knowledge or

information sufficient to admit or deny the remaining allegations of paragraph 11, and therefore denies same.

12.    Seroquel was widely advertised, marketed and represented by AstraZeneca as a safe and effective atypical anti-psychotic.

**ANSWER**:  AstraZeneca admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with the FDA-approved labeling. AstraZeneca further admits that, pursuant to approval by the FDA, it promotes SEROQUEL® in accordance with the FDA-approved prescribing information.  AstraZeneca denies that SEROQUEL® was "widely advertised."  AstraZeneca denies any remaining allegations of paragraph 12.

13.    The product warnings for Seroquel in effect during the relevant time period were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks associated with this drug.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 13.

14.    The anti-psychotic drug market is enormous.  Defendant viewed Seroquel as a blockbuster product with significant projected growth potential.  In 2002 alone, Seroquel reached over $1.2 Billion in sales.

**ANSWER**:  AstraZeneca states that the allegations of paragraph 14 are conclusory, vague, and ambiguous, and therefore AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations and denies same.

15.    The use of Seroquel has been has been [sic] known to cause serious and sometimes fatal injuries to the liver, kidneys, and pancreas.  Its adverse effects include, but are

not limited to, ketoacidosis, pancreatitis, and diabetes mellitus, and other serious health problems

associated with diabetes including heart disease, blindness, coma, seizures, and death.  In

addition to an increased risk of developing diabetes mellitus, and the serious complications

streaming therefrom, including seizures, coma, death, liver disease, kidney disease, blindness,

other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary

frequency and hyperglycemia have been attributed to Seroquel.

**ANSWER**:  AstraZeneca admits that there have been reports of diabetes in people with

schizophrenia and other ailments who were treated with SEROQUEL®, but denies that

SEROQUEL® causes diabetes.  AstraZeneca denies any remaining allegations of paragraph 15.

16.     The reported risk associated with Seroquel and the onset of diabetes is nearly 3.34

times higher than older drugs used to treat schizophrenia, such as Haldol.  According to these

reports, compared to other drugs in its class, Zyprexa, (Eli Lilly & Co.) – 1.27 times more likely,

and Risperdal (Johnson & Johnson) – 1.49 times more likely, Seroquel has a much greater

increased association with the onset of diabetes mellitus than any other anti-psychotic on the

market.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 16.

17.     Seroquel was marketed heavily by AstraZeneca as a safe and effective treatment

for the treatment of schizophrenia, promising fewer side effects than other similar treatments

including the other atypical antipsychotics on the market.

**ANSWER**:  AstraZeneca admits that, pursuant to approval by the FDA, it promotes

SEROQUEL® in accordance with the FDA-approved prescribing information.  AstraZeneca

denies any remaining allegations of paragraph 17.

18.    AstraZeneca, through its marketing department, its sales managers, and field sales force promoted the drug for uses beyond its approved indications, offering incentives to doctors to increase prescriptions. Through these marketing efforts, AstraZeneca was able to capture a larger market share in the anti-psychotic market.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 18.

19.    These marketing efforts were designed and implemented to create the impression in physicians' minds that Seroquel was safe and effective for his patients, and that it carried less risk of side effects and adverse reactions than other available treatments.

**ANSWER**:  AstraZeneca admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with the FDA-approved labeling. AstraZeneca further admits that, pursuant to approval by the FDA, it promotes SEROQUEL® in accordance with the FDA-approved prescribing information.  AstraZeneca denies any remaining allegations of paragraph 19.

20.    The marketing and promotion efforts of AstraZeneca, its advertisers, and sales force served to overstate the benefits of Seroquel, and minimize and downplay the risks associated with the drug. These promotional efforts were made, while fraudulently withholding important safety information from the physicians, the FDA, and the public, specifically that AstraZeneca was aware of numerous reports of diabetes associated with the use of Seroquel, well beyond the background rate, and well beyond the rate for other anti-psychotic agents.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 20.

21.    On August 22, 2003, new reports were issued which confirmed previous studies describing a link between the class of atypical antipsychotics and diabetes. These new reports,

8

described an increased incidence of diabetes in patients receiving Seroquel, than in patients receiving older anti-psychotics, or even other atypicals, including Zyprexa, Clozaril, and Risperdal.

**ANSWER**:  AstraZeneca denies that SEROQUEL® causes diabetes.  AstraZeneca further denies that the allegations of paragraph 21 fully and accurately describe the medical and scientific literature pertaining to atypical antipsychotics, including SEROQUEL®, and diabetes. AstraZeneca denies any remaining allegations of paragraph 21.

22.    Clozaril (clozapine) was the first atypical introduced in the early 1990's. Risperdol, (risperidone), was approved for use in the United States in 1994.  In September 1996 the Food and Drug Administration (FDA) approved another new atypical antipsychotic, Zyprexa (olanzapine), for use in schizophrenia, and Seroquel (quetiapine) was approved in September 1997.

**ANSWER**:  AstraZeneca admits that the FDA approved SEROQUEL® for prescription by physicians in the United States on September 26, 1997.  AstraZeneca states that it lacks knowledge or information sufficient to admit or deny the remaining allegations of paragraph 22, and therefore denies same.

23.    These look-alike, copycat drugs are nothing new in the pharmaceutical industry, as major manufacturers, who have poured so much money into marketing, and away from research are forced to introduce copycat drugs to the market rapidly, to avoid losing market share to its competitors.  The copycat drugs are often accompanied by promises of better efficacy and less side effects, but typically, they are approved without the requirements of significant testing, riding the coat tails of drugs already on the market.

**ANSWER**:  To the extent that the allegations of paragraph 23 are intended to be directed at AstraZeneca and/or SEROQUEL®, they are denied.

24.    The Japanese label for Seroquel provides a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informs physicians regarding the necessity of medical monitoring of patients on Seroquel. At the time the Plaintiff ingested Seroquel, the Defendant had not adopted this safer; more accurate, label for the U S. distribution of Seroquel.

**ANSWER**:  AstraZeneca states, upon information and belief, that Japan's Ministry of Health, Labor, and Welfare has required language in the labeling of SEROQUEL® in Japan relating to diabetes and glucose monitoring, but denies that the Japanese labeling for SEROQUEL® is safer or more accurate than the FDA-approved U.S. labeling for SEROQUEL®.  AstraZeneca denies any remaining allegations of paragraph 24.

25.    The Japanese label warns specifically of the diabetes risk, prominently in the beginning of the package label stating:

      a.    Quetiapine is contraindicated for use in patients with diabetes or a history of diabetes;

      b.    Quetiapine should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes;

      c.    Patients receiving quetiapine should be carefully monitored for symptoms of hyperglycemia and the drug should be discontinued if such symptoms occur. The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination; and,

      d.    Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with the quetiapine and how to identify the symptoms of hyperglycemia.

**ANSWER**:  AstraZeneca states, upon information and belief, that Japan's Ministry of Health, Labor, and Welfare has required language in the labeling of SEROQUEL® in Japan

relating to diabetes and glucose monitoring, but denies that the allegations of paragraph 25 fully and accurately state that warning. AstraZeneca denies that SEROQUEL® causes diabetes. AstraZeneca denies any remaining allegations of paragraph 25.

26.    In regulatory action overseas, the Ministry of Health, Labor, and Welfare in Japan has ordered a Dear Doctor warning for AstraZeneca's quetiapine (Seroquel) after the ministry received 13 reports of serious side effects, including one death, since the drug's launch in that country in February 2001. Case reports involved elevated levels of blood glucose, diabetic ketoacidosis, and coma.

**ANSWER**:  AstraZeneca admits that the Japanese Ministry of Health, Labor, and Welfare asked it to notify Japanese physicians of a small number of reports relating to diabetes. AstraZeneca denies that SEROQUEL® causes diabetes and further denies any remaining allegations of paragraph 26.

27.    Japanese researchers report that severe weight gain can be a serious side effect of combination therapy involving atypical antipsychotics and certain SSRIs. In particular, in a retrospective chart review, they identified the combination of risperidone and paroxetine as associated with severe weight gain—as much as 14 kg over four months in one patient—that also resulted in diabetic complications.  The authors speculate that the cause is a drug-drug interaction involving inhibitory actions by both drugs on the cytochrome P450 enzyme, CYP2D6.

**ANSWER**:  AstraZeneca states the allegations of paragraph 27 appear to be directed against medications other than SEROQUEL® and, therefore, require no response from AstraZeneca.  To the extent that such allegations are construed as factual allegations directed at

AstraZeneca, AstraZeneca states that it lacks the knowledge or information necessary to respond to such allegations and therefore denies the same.

28.    While warning of the association of Seroquel with diabetes, increased glucose tolerance, ketoacidosis, weight gain, and the need for medical monitoring in Japan, AstraZeneca has left the US public and physicians in the dark.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 28.

## JURISDICTION AND VENUE

29.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship between Plaintiff and the Defendant and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Defendant sells and markets Seroquel in the District of Columbia and otherwise regularly conducts business in the District of Columbia.

**ANSWER**:  AstraZeneca states that, due to the citizenship of its general and limited partners, it is a citizen of Delaware, New York and Sweden, and that complete diversity exists between it and Plaintiff, who is a citizen of Missouri.  AstraZeneca admits that it markets and sells SEROQUEL®, a prescription medication, in the District of Columbia and elsewhere in the United States.  Responding further, AstraZeneca admits that Plaintiff alleges that the amount in controversy exceeds $75,000.00, exclusive of interests and costs.  AstraZeneca also admits this Court has subject matter jurisdiction over this action.

## COUNT I

## NEGLIGENCE

30.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

**ANSWER**:  AstraZeneca incorporates by reference all other paragraphs of this Answer as if fully set forth herein.

31.    Defendant is the designer, manufacturer, and seller of the drug Seroquel.

**ANSWER**:  AstraZeneca admits that, pursuant to approval by the FDA, it manufactures and sells SEROQUEL® in the United States.  AstraZeneca denies the remaining allegations of paragraph 31.

32.    When placed in the stream of commerce in 1997, Seroquel was not accompanied by adequate warnings regarding the significant blood sugar related risks associated with the ingestion of Seroquel, particularly diabetes mellitus.  The warnings given by the defendant did not accurately reflect the existence of the risk, let alone the incidence, symptoms, scope, or severity of such injuries.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 32.

33.    Defendant failed to perform adequate testing concerning the safety of the drug Seroquel in that adequate testing would have shown that Seroquel poses serious risk of blood sugar related problems which would have permitted adequate and appropriate warnings to have been given by Defendant to prescribing physicians, health insurance companies, the various states' formularies, and the consuming public.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 33.

34.    Defendant had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of the drug, Seroquel, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

**ANSWER**:  AstraZeneca states that the allegations of paragraph 34 state conclusions of law to which no response is necessary.  To the extent that such allegations are construed as factual allegations, AstraZeneca states that those allegations are conclusory, vague, and ambiguous, and therefore AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations and denies same.  AstraZeneca denies that the allegations of paragraph 34 fully and accurately state its duty under the law.  AstraZeneca admits that at all times it complied with its duty under the law.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 34.

35.    Defendant was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Seroquel in that, among other things, the Defendant:

> a.    failed to use reasonable care to design an atypical anti-psychotic that was safe for its intended and foreseeable uses, not defective, and not unreasonably dangerous;
>
> b.    failed to use reasonable care in designing and manufacturing Seroquel as to make it safe for its intended uses, not defective, and not unreasonably dangerous;
>
> c.    recklessly, falsely, and deceptively represented or knowing omitted, suppressed, and/or concealed material facts regarding the safety and efficacy of Seroquel from prescribing physicians, the medical community at large, health insurers, state formularies;
>
> d.    negligently marketed Seroquel despite the fact that risks of the drug were so high and the benefits of the drug were so speculative that no reasonable pharmaceutical company, exercising due care, would have done so;
>
> e.    failed to use reasonable care to make reasonable tests, inspections, drug trials, and/or evaluations necessary to discover such defects and unreasonably dangerous conditions associated with defendant's drug, Seroquel;
>
> f.    failed to comply with and/or to use reasonable care to comply with standards of care including accepted industry standards, FDA

recommendations, government regulations, statutes, in the design, manufacture, affixing of warnings, and otherwise production and distribution of defendant's drug, Seroquel;

g.      failed to use reasonable care to timely remove and/or recall from the market, retrofit, and/or otherwise prevent the continued contact of

      a.      plaintiff or persons like plaintiff with such defects and unreasonably dangerous conditions of Seroquel;

h.      failed to use reasonable care to investigate and/or use known and/or knowable reasonable alternative designs, manufacturing processes, and/or materials for Seroquel;

i.      failed to use reasonable care to warn plaintiff of dangers known and/or reasonably suspected by defendant to be associated with Seroquel;

j.      failed to timely use reasonable care to discover the dangerous conditions or character of defendant's drug, Seroquel;

k.      failed to use due care in the design, testing and manufacturing of Seroquel so as to prevent the aforementioned risks, including, *inter alia*, diabetes mellitus, and the serious complications streaming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia, to individuals when Seroquel was used as a medication;

l.      failed to issue proper warnings regarding all possible adverse side effects associated with the use of Seroquel and the comparative severity and duration of such adverse effects, despite the fact that the defendant knew, or should have known, that numerous cases reports, adverse event reports, and other data that associated Seroquel with diabetes mellitus, and the serious complications streaming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia;

m.      failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Seroquel;

n.      failed to provide adequate training and information to medical care providers for the appropriate use of Seroquel;

o.      failed to warn plaintiff and healthcare providers, prior to actively encouraging and promoting the sale of Seroquel, either directly, or indirectly, orally, in writing, or other media about the following:

p.      The need for a battery of diagnostic tests to be performed on the patient prior to ingesting Seroquel to discover and ensure against potentially fatal side effects; and/or

q.      The need for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal side effects; and/or

r.      The adverse side effects associated with the use of Seroquel, including, but not limited to, diabetes mellitus; and/or

s.      The possibility of becoming disabled as a result of using Seroquel; and,

t.      failed to timely develop and implement a safer, alternative design of Seroquel, which would meet the same need without the known risks associated with Seroquel and which would not have made the product too expensive to maintain its utility.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 35 and its subparts.

36.    Despite the fact that the defendant knew or should have known that Seroquel caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the defendant continued to market Seroquel to consumers, including the plaintiff, when there were safer alternative methods available.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 36.

37.    Defendant knew or should have known that consumers such as plaintiff would foreseeably suffer injury as a result of defendant's failure to exercise ordinary care as described above.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 37.

38.    As a direct and proximate result and legal result of the defendant's failure to supply appropriate warnings for the drug, Seroquel, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action of the defendant described herein, the Seroquel recipient Plaintiff ingested Seroquel and suffered significant injury.

**ANSWER**: AstraZeneca denies the allegations of paragraph 38.

39.    Defendant's negligence was a proximate cause of the harm suffered by the plaintiff members.

**ANSWER**: AstraZeneca denies the allegations of paragraph 39.

40.    As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

**ANSWER**: AstraZeneca denies the allegations of paragraph 40.

<u>**COUNT II**</u>

**STRICT PRODUCT LIABILITY**
**(Failure to Warn)**

41.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**ANSWER**: AstraZeneca incorporates by reference all other paragraphs of this Answer as if fully set forth herein.

42.    The Seroquel manufactured and/or supplied by defendant was unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects; the warnings given did not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects.  Defendant failed to perform adequate testing in that adequate testing would have shown that Seroquel possessed serious potential side effects with respect to which full and proper

warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of Seroquel. Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drug.

**ANSWER**: AstraZeneca denies the allegations of paragraph 42.

43.     The Seroquel manufactured and/or distributed and/or supplied by defendant was defective due to inadequate post-marketing warning or instruction because defendant failed to provide adequate warnings to users or consumers of Seroquel and continued to aggressively promote Seroquel.

**ANSWER**: AstraZeneca denies the allegations of paragraph 43.

44.     As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

**ANSWER**: AstraZeneca denies the allegations of paragraph 44.

## COUNT III

### STRICT PRODUCT LIABILITY
### (Pursuant to Restatement Second of Torts 402a (1965))

45.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**ANSWER**:  AstraZeneca incorporates by reference all other paragraphs of this Answer as if fully set forth herein.

46.     The Seroquel manufactured and/or distributed and/or supplied by defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design and formulation of the drug.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 46.

47.     Alternatively, the Seroquel manufactured and/or distributed and/or supplied by defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than alternative drugs available for the treatment of schizophrenia or bi-polar mania, namely so-called first generation anti-psychotics.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 47.

48.     There existed, at all times material hereto, safer alternative medications.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 48.

49.     Defendant did not perform adequate testing upon Seroquel.  Adequate testing would have revealed that Seroquel causes serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 49.

50.     The Seroquel manufactured, designed, marketed, distributed and/or sold by defendant was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Seroquel, and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 50.

51.     Defendant did not warn the FDA of material facts regarding the safety and efficacy of Seroquel, which facts defendant knew or should have known.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 51.

52.     The Seroquel manufactured and/or distributed and/or supplied by defendant was defective due to inadequate post-marketing warning or instruction because, after the defendant knew or should have known of the risk of injury from Seroquel, they failed to provide adequate warnings to users or consumers of Seroquel and continued to promote Seroquel.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 52.

53.     As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 53.

## COUNT IV

## COMMON LAW FRAUD

54.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**ANSWER**:  AstraZeneca incorporates by reference all other paragraphs of this Answer as if fully set forth herein.

55.    Defendant either knew or should have known that Seroquel was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed, and otherwise not as represented to be as alleged above.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 55.

56.    Defendant was under a duty to disclose this information to the Plaintiff under the common law as well as laws requiring it not to engage in false and deceptive trade practices, and as otherwise alleged in this complaint, because Defendant made representations and partial disclosures concerning the nature and quality of this product which they had a duty to correct, because Defendant was in a superior position to know the true state of the facts about the dangerous and defective nature of Seroquel and its known risks to the Plaintiff.  These deliberate and/or intentional omissions of material facts and misrepresentations include but are not limited to:

       a.    suppressing, failing to disclose and mischaracterizing the known risks of ingesting Seroquel;

       b.    omitting material information showing that Seroquel was no more effective than other anti-psychotic drugs on the market available;

       c.    failure to timely and fully disclose the actual results of clinical tests and studies related to Seroquel;

d.      failing to issue adequate warnings concerning the risks and dangers of ingesting Seroquel which would disclose the nature and extent of the side effects of Seroquel;

e.      failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

f.      failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done; and,

g.      making the representations concerning the safety, efficacy and benefits of Seroquel as detailed in this complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading.

**ANSWER**:  AstraZeneca states that the allegations of paragraph 56 related to "duty" state conclusions of law to which no response is necessary.  To the extent that such allegations are construed as factual allegations, AstraZeneca states that those allegations are conclusory, vague, and ambiguous, and therefore AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations and denies same.  AstraZeneca denies that the allegations of paragraph 56 fully and accurately state its duty under the law.  AstraZeneca admits that at all times it complied with its duty under the law.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 56 and its subparts.

57.     Plaintiff did not know, and could not learn, the material facts and important information Defendant omitted and suppressed.  The facts and information suppressed and concealed by Defendant is material, and of such a nature that it can be reasonably presumed that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in causing to Plaintiff to ingest Seroquel and be exposed to such unnecessary risks.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 57.

58.     As a result of Defendant's fraud, suppression and omission of material facts, the Plaintiff acted to her detriment in purchasing and ingesting Seroquel, which they would not have purchased or ingested had they been told the truth.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 58.

59.     As a direct and proximate cause and legal result of the defendant's fraud as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 59.

**COUNT V**

**BREACH OF EXPRESS WARRANTY**

60.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**ANSWER**:  AstraZeneca incorporates by reference all other paragraphs of this Answer as if fully set forth herein.

61.     Defendant expressly warranted that Seroquel was safe and well accepted by clinical studies.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 61.

62.     Seroquel does not conform to these express representations because Seroquel is not safe and has high levels of serious, life-threatening, side effects.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 62.

63.    As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 63.

## COUNT VI

### BREACH OF IMPLIED WARRANTY

64.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**ANSWER**:  AstraZeneca incorporates by reference all other paragraphs of this Answer as if fully set forth herein.

65.    At the time Defendant marketed, sold and distributed Seroquel for use by Plaintiff, Defendant knew of the use for which Seroquel was intended and impliedly warranted Seroquel to be of merchantable quality and safe and fit for such use.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 65.

66.    Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether Seroquel was of merchantable quality and safe and fit for its intended use.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 66.

67.    Contrary to such implied warranty, Seroquel was not of merchantable quality or safe or fit for its intended use, because Seroquel was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 67.

68.    As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 68.

### COUNT VII

### UNJUST ENRICHMENT

69.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

**ANSWER**:  AstraZeneca incorporates by reference all other paragraphs of this Answer as if fully set forth herein.

70.    Defendant has been unjustly enriched in the amount of the profits they have earned as a result of Defendant's conduct as alleged herein.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 70.

71.    Defendant has been unjustly enriched at the expense of and to the detriment of the Plaintiff.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 71.

### AFFIRMATIVE OR SEPARATE DEFENSES

1.    Plaintiff's alleged injuries were proximately caused by circumstances, events, or persons over whom AstraZeneca had no authority or control and for which AstraZeneca is not

answerable in damages to Plaintiff.

2.      Plaintiff and her agents, including Plaintiff's Physicians, assumed the risks, if any, inherent in the use of SEROQUEL®.

3.      To the extent Plaintiff's claims were caused by the actions, omissions or products of persons or entities, over whom AstraZeneca has no dominion, authority or control, AstraZeneca is entitled to have its liability to the Plaintiff, if any, reduced as a result of the negligence or fault of said persons or entities, pursuant to applicable law.

4.      Plaintiff's recovery is barred and/or should be reduced under the applicable law because of Plaintiff's contributory negligence or fault and/or comparative negligence or fault.

5.      Plaintiff's alleged injuries, if related to her use of SEROQUEL®, were caused by an unforeseeable material and substantial alteration, change, improper handling, or misuse of the product after it left the control of AstraZeneca.

6.      The New Drug Application for SEROQUEL® was approved by the United States Food and Drug Administration under the applicable statute, 21 U.S.C. § 301 *et seq.*, and regulations promulgated thereunder.  Compliance with such statutes and regulations by AstraZeneca demonstrates that SEROQUEL® was safe and effective and not unreasonably dangerous and, further, preempts and bars Plaintiff's claims against AstraZeneca.  Compliance with such regulations also demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing and sale of this prescription drug, and that it was neither defective nor unreasonably dangerous.

7.      Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution because of the pervasive federal regulation of prescription drug manufacturing, testing, marketing, and labeling.

8.     All labeling for SEROQUEL® has been approved by the United States Food and Drug Administration under the applicable statute, 21 U.S.C. § 201 *et seq*., and regulations promulgated thereunder.  As the agency charged with implementing the Food, Drug, and Cosmetic Act, the FDA affirmatively has stated that "under existing preemption principles, FDA approval of labeling . . . preempts conflicting or contrary State law."  71 *Fed. Reg.* at 3,934. Moreover, the FDA has stated, "Given the comprehensiveness of FDA regulation of . . . labeling under the act, additional requirements for the disclosure of risk information are not necessarily more protective of patients.  Instead, they can erode and disrupt the careful and truthful representations of benefits and risks that prescribers need to make appropriate judgments about drug use.  Exaggeration of risk could discourage appropriate use of a beneficial drug."  *Id*. at 3,935.  Plaintiff's claims based on the labeling for SEROQUEL® are therefore preempted by federal law pursuant to the Supremacy Clause of the United States Constitution.

9.     Plaintiff's claims against AstraZeneca are barred as a matter of law pursuant to relevant provisions of the Restatement (Third) of Torts and the Restatement (Second) of Torts, including, but not limited, to Section 402A, comment k.

10.     Persons other than AstraZeneca stood in the position of learned intermediary between Plaintiff and AstraZeneca which therefore owed and breached no duty to warn Plaintiff directly, and the SEROQUEL® Plaintiff allegedly used was therefore neither unreasonably dangerous nor defective by virtue of any alleged absence of adequate warnings or instructions.

11.     Plaintiff's Complaint fails to state a claim upon which relief can be granted against AstraZeneca in that the methods, standards, and techniques utilized with respect to the design, manufacture, marketing and sale of the prescription drug SEROQUEL®, including adequate warnings and instructions with respect to the product's use included in the product's

package insert and other literature, conformed to the applicable state of the art, and the applicable standard of care based upon available medical and scientific knowledge.

12.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

13.     Plaintiff's Complaint against AstraZeneca fails to state a claim upon which relief may be granted.

14.     Plaintiff's claims against AstraZeneca are barred, in whole or in part, by laches, waiver and/or estoppel.

15.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate alleged damages.

16.     The injuries and damages claimed by Plaintiff, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of AstraZeneca was not the proximate and/or competent producing cause of such alleged injuries and damages.

17.     Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First Amendment rights to petition the government.

18.     The alleged injuries and damages, if any, were the result of unavoidable circumstances that could not have been prevented by any person, including AstraZeneca.

19.     Plaintiff's Complaint fails to state a claim upon which relief can be granted for several or joint and several liability.

20.     Plaintiff's Complaint fails to state a claim upon which relief can be granted as to costs, attorney's fees, expert fees, expenses, pre-judgment interest, post-judgment interest,

refund, rescission, unjust enrichment, disgorgement, or restitution.

21.     Plaintiff's claims are barred in whole or in part because the commercial speech relating to SEROQUEL® was not false or misleading and is protected under the First Amendment to the United States Constitution and the applicable state constitution.

22.     Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

23.     Plaintiff cannot state a claim with regard to warnings and labeling for prescription drugs because the remedy sought by Plaintiff is subject to the exclusive regulation of the FDA.

24.     This Court should abstain from adjudicating Plaintiff's claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

25.     Upon information and belief, each item of economic loss alleged in the Complaint was, or with reasonable certainty will be, replaced or indemnified in whole or in part from collateral sources.

26.     Plaintiff did not detrimentally rely on any labeling, warnings, or information concerning SEROQUEL®.

27.     Plaintiff's alleged injuries and damages, if any, were the result of an idiosyncratic reaction which AstraZeneca could not reasonably foresee.

28.     Plaintiff, or her physicians, were aware or should have been aware of any potential hazards reported to be associated with the use of SEROQUEL® and appreciated or should have appreciated these potential hazards based, in part, on the directions, information, and warnings provided by AstraZeneca and others generally available in the medical and scientific

literature.  Therefore, Defendant AstraZeneca had no duty to warn of any alleged danger or defect.

29.    Plaintiff is barred from recovering any damages by virtue of the fact that there was no practical or technically feasible alternative design or formulation that would have prevented the harm alleged by the Plaintiff without substantially impairing the usefulness or intended purpose of the product.

30.    Plaintiff's claims for breach of warranty are barred because Plaintiff failed to give timely notice of any alleged breach of warranty.

31.    AstraZeneca did not sell or distribute the prescription drug SEROQUEL® directly to Plaintiff, and Plaintiff did not receive or rely upon any representations or warranties as alleged in the Complaint.  Plaintiff's claims for breach of warranty are therefore barred by lack of privity between Plaintiff and AstraZeneca.

32.    Plaintiff's claims for breach of warranty, express or implied, are barred by the applicable provisions of the applicable state's Uniform Commercial Code.

33.    Plaintiff's claims are barred, in whole or in part, to the extent that they purport to impose liability upon AstraZeneca for any conduct in which it engaged in the exercise of its rights under federal law, including, without limitation, the Constitution of the United States and the First Amendment thereto.

34.    Plaintiff's Complaint fails to state a claim for which relief can be granted for fraud, misrepresentation, deception, omission, or concealment insofar as Plaintiff has failed to plead such claims with sufficient particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

35.    Plaintiff's Complaint fails to state a claim for which relief can be granted for

fraud, misrepresentation, deception, omission, or concealment.

36.    This Court is not the proper forum and is not a convenient forum for the adjudication of Plaintiff's claims.

37.    This Court is not the proper venue.

38.    Plaintiff's Complaint fails to state a claim against AstraZeneca upon which relief can be granted for punitive or exemplary damages.

39.    Plaintiff's claim for punitive or exemplary damages is barred under the applicable state and federal law, including State Farm Mut. Auto. Ins. Co. v. Campbell et al., 538 U.S. 408 (2003).  Permitting recovery of punitive or exemplary damages in this action would contravene AstraZeneca's rights as reserved by the Fifth, Seventh, Eighth, and Fourteenth Amendments to the United States Constitution and other provisions of the United States Constitution and the applicable state constitutions.

40.    Unless AstraZeneca's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate AstraZeneca's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the applicable state constitutions, and also would be improper under the applicable state common law and public policies.

41.    Plaintiff's claim for punitive damages against AstraZeneca cannot be maintained, because an award of punitive damages would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum

amount, on the amount of punitive damages that a jury may impose; a risk that punitive damages

will be imposed retrospectively based on conduct that was not deemed punishable at the time the

conduct occurred; and it would permit and encourage arbitrary and discriminatory enforcement,

all in violation of the due process clause of the Fourteenth Amendment to the United States

Constitution, the applicable state constitutions, and the applicable state common law and public

policies.

42.    Plaintiff's claim for punitive damages against AstraZeneca cannot be maintained

because any award of punitive damages would be by a jury that: (1) is not provided standards of

sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive

damages award; (2) is not adequately instructed on the limits on punitive damages imposed by

the applicable principles of deterrence and punishment; (3) is not expressly prohibited from

awarding punitive damages, or determining the amount of an award of punitive damages, in

whole or in part, on the basis of invidiously discriminatory characteristics, including the

residence, wealth, and corporate status of AstraZeneca; (4) is permitted to award punitive

damages under a standard for determining liability for punitive damages that is vague and

arbitrary and does not define with sufficient clarity the conduct or mental state that makes

punitive damages permissible; and (5) is not subject to adequate trial court and appellate judicial

review for reasonableness and furtherance of legitimate purposes on the basis of objective

standards.  Any such verdict would violate AstraZeneca's due process rights guaranteed by the

Fourteenth Amendment to the United States Constitution and by the applicable state

constitutions, and also would be improper under the applicable state common law and public

policies.

43.    To the extent that the applicable state law permits punishment to be measured by

the net worth or financial status of AstraZeneca and imposes greater punishment on defendants

with larger net worth, such an award would be unconstitutional because it permits arbitrary,

capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts

imposing punishment, and allows dissimilar treatment of similarly situated defendants, in

violation of the due process and equal protection provisions of the Fourteenth Amendment to the

United States Constitution, the Commerce Clause of the United States Constitution, and the

applicable state constitutions.

44.     With respect to Plaintiff's demand for punitive or exemplary damages,

AstraZeneca specifically incorporates by reference any and all standards or limitations regarding

the determination or enforceability of punitive or exemplary damages awards under federal law

and the applicable state law.

45.     No act or omission of AstraZeneca was willful, unconscionable, oppressive,

fraudulent, wanton, malicious, reckless, intentional, or with actual malice, with reckless

disregard for the safety of Plaintiff or with conscious disregard and indifference to the rights,

safety and welfare of Plaintiff, and therefore Plaintiff's Complaint fails to state a claim upon

which relief can be granted for punitive or exemplary damages.

46.     Plaintiff's Complaint seeks damages in excess of those permitted by law.

AstraZeneca asserts any statutory or judicial protection from punitive or exemplary damages

which is available under the applicable law, and any award of punitive or exemplary damages is

barred.

47.     AstraZeneca has not knowingly or intentionally waived any affirmative defenses

and asserts all defenses available under applicable law.  AstraZeneca reserves the right to

modify, clarify, amend, or supplement these separate or affirmative defenses as discovery

proceeds in this case.

## JURY DEMAND

AstraZeneca hereby demands a trial by jury.

## PRAYER

WHEREFORE, AstraZeneca requests that the Court enter judgment in its favor and

against Plaintiff on all counts and allegations of her Complaint and that the Court award

AstraZeneca costs and such other relief as it deems just and proper.

ASTRAZENECA PHARMACEUTICALS LP

BY: ___/s/  Rebecca K. Wood_____
          Rebecca K. Wood, D.C. Bar No. 473616
          Frank R. Volpe, D.C. Bar No. 458791
          SIDLEY AUSTIN LLP
          1501 K Street, N.W.
          Washington, D.C. 20005
          Telephone:    (202) 736-8000
          Facsimile:    (202) 736-8711
          E-mail:    fvolpe@sidley.com
                     rwood@sidley.com

Attorneys for AstraZeneca Pharmaceuticals LP

*Of Counsel:*

Michael W. Davis
Tamar B. Kelber
Rodney K. Miller
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
E-Mail:     mdavis@sidley.com
           tkelber@sidley.com
           rkmiller@sidley.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this 17th day of October, 2006, served a true and correct copy of the foregoing on below-listed counsel of record in this proceeding, by electronic means, as well as by United States mail, properly addressed and first class postage prepaid.


                           /s/ Rebecca K. Wood                   
                                   Rebecca K. Wood

**COUNSEL OF RECORD**:

J. Christopher Ide
Michael J. Miller
Miller & Associates
105 North Alfred Street
Alexandria, VA 22314